# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **CHRISTOPHER M. DALE,** | )<br>)<br>) |
| **Plaintiff,** | )<br>) |
| v. | )<br>) Case No. 12-cv-2789-CM |
| **(fnu) HARRIS, et al.,** | )<br>)<br>) |
| **Defendants.** | )<br>) |

## MEMORANDUM AND ORDER

On December 8, 2010, Overland Park police arrested plaintiff for aggravated assault in Johnson County. Plaintiff was convicted on the following charges in various Johnson County cases: two counts of felony aggravated robbery, misdemeanor theft, aggravated assault, and felony identity fraud. Plaintiff has remained in custody since his arrest, living in a segregation module at his own request because he believed he would get into a fight in general housing.

On December 3, 2011, plaintiff struck Deputy Provenzano in the collarbone during a dispute regarding whether plaintiff's cell window should remain closed. Prior to the altercation, plaintiff had kicked a trash can lid and refused officers' orders not to touch his cell window. Deputy Provenzano issued three citations to plaintiff for his behavior. Deputy Berry conducted an investigation of the incident, but plaintiff failed to participate. On December 6, 2011, Lieutenant Tompkins ("Lt. Tompkins") reviewed the relevant reports and determined that plaintiff should be subject to enhanced sanctions. These sanctions were implemented due to plaintiff's actions during the Provenzano incident, plaintiff's disciplinary history since December 8, 2010, his consistent classification as a maximum custody inmate, and plaintiff's living situation in administrative segregation at that time. Lt.

-1-

Tompkins prepared the forms for plaintiff's hearing on December 6, 2011, but he was unable to conduct the hearing that day.

On December 9, 2011, plaintiff had a scheduling conference hearing for one of his criminal cases. During the transport to the court, plaintiff misbehaved in the parking garage by making a veiled threat that he had pliers in his possesion and engaging in behavior that appeared to be a refusal to cooperate. As a result, defendants decided plaintiff would not go to court and would instead go back to the detention center. On the way back, plaintiff spat on one official, physically resisted restraint, and slipped his hand out of handcuffs while officials restrained him. Defendants eventually re-handcuffed plaintiff while plaintiff continued to resist the handcuffs, tried to grab an officer's pepper spray, and grabbed an officer's hand. For safety, defendants placed plaintiff in a restraint chair. While plaintiff was in the restraint chair, medical staff inspected plaintiff's restraints and medical condition. The staff determined plaintiff suffered only minor injuries, his circulation was fine, and his verbal, motor, and eye-opening responses were normal.

Lt. Tompkins completed the forms from the Provenzano Incident and explained the sanctions to plaintiff on December 9, 2011. At that time, Lt. Tompkins gave plaintiff a copy of the December 6, 2011 Notice of Disciplinary Rights Form and the December 9, 2011 Disciplinary Board Report form. Sanctions lasted for thirteen days. Officers captured the December 3, 2011 and the December 9, 2011 incidents on video, which is included in the evidence.

On November 27, 2012, plaintiff brought this action against defendants alleging multiple constitutional violations stemming from the December 3, 2011 and the December 9, 2011 incidents. On November 4, 2013, defendants filed this motion for summary judgment against plaintiff (Doc. 42). Plaintiff failed to timely file a response. On November 27, 2013, the court issued a show cause order to plaintiff requiring him to explain why he failed to timely respond and to respond to the motion for

summary judgment. (Doc. 46.) The show cause order notified plaintiff that his failure to comply with the order would likely result in the court considering defendants' motion as uncontested and granting it without further notice to plaintiff. The court gave plaintiff until December 11, 2013, to respond, but plaintiff failed to do so.

On December 6, 2013, the order was returned as undeliverable. (Doc. 47.) Although plaintiff was in custody at the time of the filings and may have been transferred to another facility, D. Kan. Rule 5.1(c)(3) imposes on all parties the duty to update their contact information. Each party must notify the clerk of a change of address. The court mailed notice to plaintiff's last address of record, which is sufficient notice pursuant to D. Kan. Rule 5.1(c)(3). Plaintiff has had sufficient time to notify the court of any change of address.

### I.     Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Although the court construes pro se pleadings liberally, pro se plaintiffs still must come forward with specific factual support for their claims. *Mumford v. Klingele*, 08-3079-CM, 2009 WL 1360110, at *2 (D. Kan. May 14, 2009).

Plaintiff did not respond to defendants' motion for summary judgment. Under D. Kan. Rule 7.4(b), "a party or attorney who fails to file a responsive brief or memorandum within the time specified in D. Kan. Rule 6.1(d) waives the right to later file such brief or memorandum." D. Kan.

Rule 7.4(b). The court will consider and decide the motion as uncontested if the party fails to timely file a responsive brief. *Id.*

The court, however, will not grant a motion for summary judgment merely because it is unopposed. *Bank Midwest, N.A. v. Millard*, No. 10-2387-JAR, 2012 WL 4359060, at *1 (D. Kan. Sept. 24, 2012). The court must still analyze the motion under Fed. R. Civ. P. 56 to determine whether summary judgment is appropriate. *Andy's Towing, Inc. v. Bulldog Bldg. Sys., Inc.*, 10-2354-JTM, 2011 WL 2433679, at *2 (D. Kan. June 14, 2011) (citing *Reed v. Bennett*, 312 F.3d 1190, 1194 (10th Cir. 2002)). Fed. R. Civ. P. 56(e) allows the court to grant summary judgment when a party fails to respond to a motion only if the motion and supporting materials show the movant is entitled to it.[1] Therefore, the court analyzes defendants' motion for summary judgment and grants it for the following reasons.[2]

## II. Discussion

### Qualified Immunity

Defendants successfully invoke qualified immunity to defend against plaintiff's claims for excessive force and violation of due process rights. Qualified immunity protects government officials from individual liability under 42 U.S.C. § 1983 unless their conduct "violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Schroeder v. Kochanowski*, 311 F. Supp. 2d 1241, 1250 (D. Kan. 2004) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

---

[1] Rule 56(e) states: "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of facts as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3); *Andy's Towing, Inc.*, 2011 WL 2433679, at *2.

[2] The court grants summary judgment on the merits and not as a sanction. *See Andy's Towing, Inc.*, 2011 WL 2433679, at *2 (citing *Reed*, 312 F.3d at 1196).

When a government official invokes qualified immunity, the challenger must "meet a heavy burden" by showing (1) the defendant violated a constitutional or statutory right and (2) the right was clearly established at the time of the defendant's unlawful conduct. *Mumford*, 2009 WL 1360110, at \*3 (citation omitted); *Schroeder*, 311 F. Supp. 2d at 1250 (citation omitted). The court requires that the complaint contain specific allegations of fact to demonstrate that the official's actions were not objectively reasonable in light of clearly established law. *Van Cleave v. City of Marysville, Kan.*, 185 F. Supp. 2d 1212, 1215 (D. Kan. 2002) (citation omitted). If plaintiff fails to establish a violation of the law, the analysis ends there and the court does not need to reach the issue of whether the law was clearly established. *Simpson v. Kansas*, No. 12-cv-2402, 2013 WL 5466732, at \*4 (D. Kan. Sept. 30, 2013) (citation omitted); *Schroeder*, 311 F. Supp. 2d at 1250 (citation omitted).

### 1. Excessive Force Claim

Defendants have presented sufficient evidence that they did not violate plaintiff's constitutional or statutory rights. Plaintiff brings Fourteenth and Eighth Amendment claims for excessive force, alleging that defendants used unreasonable force during the December 9, 2011 transportation of plaintiff to a scheduling conference. However, the court evaluates claims about a convicted prisoner's conditions of confinement under the Eighth Amendment, not the Fourteenth Amendment. *Simpson*, 2013 WL 5466732, at \*6; *Mumford*, 2009 WL 1360110, at \*3 n.3. Here, plaintiff was a convicted prisoner at the time the claims arose. Accordingly, the court will evaluate his excessive force claim under the Eighth Amendment.

Plaintiff argues that the use of force by officers in the parking garage incident and the use of the restraint chair violated his Eighth Amendment rights. The Eighth Amendment prohibits "the unnecessary and wanton infliction of pain." *Mumford*, 2009 WL 1360110, at \*3 (citing *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)). To evaluate Eighth Amendment claims, the court considers

"whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* (quoting *Hudson*, 503 U.S. at 5 (internal quotation marks omitted)).

In *Mumford*, a prisoner plaintiff claimed the defendant maliciously slammed him into a wall while transporting the plaintiff. *Id*. at *4. The court determined that the defendant's use of force was reasonable because it was necessary to maintain control and order while transporting the plaintiff. *Id.* Any injury to the plaintiff occurred because of his own belligerent conduct. *Id.* The court found the defendant provided "ample evidentiary basis to support his contention that his conduct was an objectively reasonable response to plaintiff's aggression under the circumstances . . . ." *Id.* (citing *Hudson*, 503 U.S. at 5).

Similarly, here defendants have set forth evidence that their use of force and use of the restraint chair did not violate plaintiff's Eighth Amendment rights, listing the following facts in support:

- thirty-seven incidents of plaintiff's misconduct, including disruptive conduct and refusal to obey officers' lawful orders;

- the disorderly physical and verbal conduct plaintiff displayed during the incident on December 9, 2011, including telling officers that he had pliers in his possession;

- defendants' use of force was necessary to regain control of plaintiff and protect themselves from plaintiff's behavior, including spitting on the officers and swinging his hands around;

- the restraint chair was necessary both for plaintiff's safety and defendants' own safety because plaintiff continued to resist defendants, tried to grab an officer's pepper spray, and grabbed an officer's hand; and

- plaintiff suffered only minor injuries.

The detailed and uncontroverted record demonstrates an ample evidentiary basis to show that defendants' use of force was objectively reasonable. Many of plaintiff's allegations, including that he did not resist defendants and that defendants used excessive force, are contradicted by the video footage. Because the use of force was reasonable, defendants did not violate plaintiff's constitutional

rights.[3] In addition, defendants have produced evidence showing that plaintiff's retaliation claim has no merit. Plaintiff's conclusory allegations do not allege a protected activity or any retaliatory motive for putting plaintiff in the restraint chair, and the court will not make arguments on plaintiff's behalf. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Accordingly, plaintiff fails to meet the first prong to overcome qualified immunity. Defendants retain qualified immunity on the excessive force claim.

### 2. Due Process Claim

Plaintiff also did not show that defendants violated his due process rights. Plaintiff alleges that Lt. Tompkins violated his due process rights by refusing to provide an adequate hearing before imposing sanctions for plaintiff's disciplinary violations of striking an officer, refusal to obey orders, and disruptive conduct. Plaintiff further argues that these sanctions were imposed in retaliation for plaintiff's actions in the parking garage on December 9, 2011, and because officers found the home addresses of deputies in plaintiff's cell.

A Fourteenth Amendment due process claim is valid where the state has interfered with a constitutionally cognizable liberty or property interest. *Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006) (citation omitted). Although prisoners do have due process protection, it is "significantly less than that guaranteed to non-prisoners." *Hunt v. Sapien*, 480 F. Supp. 2d 1271, 1275 (D. Kan. 2007) (citation omitted). Further, "unless the conditions of confinement 'impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life[,]' state regulations

---

[3] Because there is no Eighth Amendment violation and no excessive force, plaintiff's failure to intervene claim fails as a matter of law and the court does not analyze it. *See Wallin v. Dycus*, 381 F. App'x 819, 823 (10th Cir. 2010) ("[A] law enforcement official who fails to intervene to prevent another law enforcement official's use of excessive force may be liable under § 1983.") (quotation and quotation marks omitted); *Atkins v. Cnty. of Orange*, 372 F. Supp. 2d 377, 407 (S.D.N.Y. 2005) (finding that a plaintiff's failure to establish any constitutional violations based on excessive force precluded a failure to intervene claim).

or policies do not create a liberty interest for prisoners in the conditions of confinement." *Id*. (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).

The Tenth Circuit uses a four factor analysis to determine whether a prisoner has a protected liberty interest: (1) whether the sanctions relate to and further a legitimate penalogical interest; (2) whether the conditions of placement are extreme; (3) whether the placement increases the duration of confinement; and (4) whether the placement is indeterminate. *Id.* at 1276.

Defendants offered evidence on all four factors. First, defendants showed plaintiff posed a physical risk by striking an officer. A history of being a security risk is sufficient evidence to meet the first prong. *Id*. (finding the prisoner's potential risk to the safety of other inmates and staff to be a legitimate penalogical interest). And defendants provided evidence that plaintiff's actions in disobeying orders and engaging in disruptive conduct warranted discipline.

Second, defendants offered proof that the conditions were not extreme under the circumstances. Although plaintiff was subject to severe restrictions, he still had opportunities for a daily hour of exercise and a weekly visitor. These are consistent with plaintiff's conditions for the preceding year while in administrative and disciplinary segregation. Defendants offered evidence that these sanctions were typical for inmates with severe behavioral or disciplinary issues.

Third, defendants showed that plaintiff's sanctions did not extend his sentence—plaintiff's sanctions did not affect the duration of plaintiff's confinement or parole.

Finally, defendants provided evidence that plaintiff was subject to the sanctions for a relatively short amount of time. Plaintiff's sanctions continued for thirteen days. Defendants put forth evidence that this was a short period of time and that plaintiff had written notice of the length of the sanctions.

Plaintiff also alleges that Lt. Tompkins issued the enhanced sanctions in retaliation for his garage misconduct, for the Provenzano incident, and for the legal addresses found in plaintiff's cell.

Defendants cited evidence that Lt. Tompkins had already decided plaintiff's sanctions in advance of the hearing originally scheduled on December 6, 2011. Defendants provided evidence that Lt. Tompkins was interrupted and did not complete the document until December 9, 2011, the date of the parking garage incident. Further, plaintiff has not alleged that his behavior on December 9, 2011, was the "but for" cause for the alleged retaliation. *See Smith v. Maschner*, 899 F.2d 940, 949–50 (10th Cir. 1990) (citation omitted). Regardless, defendants have put forth ample evidence that plaintiff's conduct warranted the sanctions. Defendant Lt. Tompkins is entitled to qualified immunity on the retaliation claim.

Defendants have provided adequate evidence to meet their summary judgment burden on this issue—there was no liberty or property interest with which defendants interfered.[4] Without a response from plaintiff, the court accepts defendants' facts as uncontroverted. Because plaintiff did not demonstrate a constitutional due process violation, defendants are entitled to qualified immunity on plaintiff's due process claim.

**Phone Call Claim**

Finally, plaintiff failed to exhaust his administrative remedies as to the claim about the phone call. Plaintiff claims that defendants called the judge presiding over one of plaintiff's cases and told him plaintiff refused to go to court. Under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), prisoners must exhaust available administrative remedies before filing an action about prison conditions under § 1983. *Jones v. Courtney*, No. 04-3255-JWL, 2005 WL 562719, at *2 (D. Kan. Mar. 7, 2005). This requirement applies even when the administrative remedies may seem futile. *Id.* Kansas state prisons have an internal grievance procedure. *Id.* Although plaintiff filed grievances about the first two claims, he did not file a grievance about this phone call. Therefore, the PLRA

---

[4] Because there is no liberty or property interest at issue, the court does not analyze whether the procedures met constitutional requirements.

-9-

precludes an action regarding the phone call. Regardless, plaintiff provides no support for his claim that defendants called the judge, and defendants have shown they are entitled to summary judgment on this claim.

**Remaining Defendants**

Plaintiff does not allege personal involvement of the remaining defendants Denning, Cortright, Rector, Keller, and Hammer. Plaintiff has not shown these plaintiffs have supervisory liability because there is no evidence they created or implemented any unconstitutional policy, caused the constitutional harm, and acted with the requisite state of mind. *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011). Further, any vicarious liability argument fails because state officials are not liable under respondeat superior for § 1983 claims. *Id.*; *Porro v. Barnes*, 624 F.3d 1322, 1327–28 (10th Cir. 2010). Without personal, supervisory, or vicarious liability, the remaining defendants face no liability for plaintiff's claims. Therefore, these defendants are entitled to summary judgment on the claims against them.

### III. Conclusion

The court admits all material facts defendants set forth for purposes of summary judgment. Plaintiff did not controvert them as required by Fed. R. Civ. P. 56. Although plaintiff did not respond, the court has considered the merits of defendants' motion. The court determines defendants have met their burden to show the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law. The court thereby grants defendants' motion for summary judgment (Doc. 42).

**IT IS THEREFORE ORDERED** that defendants' Motion for Summary Judgment (Doc. 42) is granted.

The case is closed.

Dated this 11th day of April, 2014, at Kansas City, Kansas.

>s/ Carlos Murguia            u
>**CARLOS MURGUIA**
>**United States District Judge**